### In re WYLEY CO.

#### (District Court, N. D. Georgia. October 18, 1923.)

#### No. 8238.

1. **Internal revenue &7—Bankrupt corporation's income tax determined by deduction of salaries of officers credited them, and not by amount of salary paid them.**

     Where the amount of salaries actually received by a bankrupt corporation's officers was much less than the amount shown by the corporation's books, whether the difference was due to the fact that salaries as entered on the books were based on supposed profits, which did not materialize, in consequence of which the salaries were not drawn, or whether the salaries were fixed absolutely, but not paid, because of lack of ready cash, the amount of taxes should be fixed by the salaries actually credited to the officers, although never paid, and not by the amounts actually received by them.

2. **Taxation &501—A tax has only such lien and priority as is given it by statute.**

     A tax has only such lien or priority as is given it by statute.

3. **Bankruptcy &346—Taxes due by bankrupt to United States, state, county, district, or municipality prorated, if fund insufficient to pay each in full.**

     Under Bankruptcy Act, § 64a (Comp. St. § 9648), providing that taxes due to the United States, state, county, district, or municipality shall be paid before dividends to creditors, and under Civ. Code Ga. 1910, § 1140, making all taxes prior liens, taxes due to the United States have no priority over other taxes due under section 64a.

4. **Bankruptcy &346—Necessary and reasonable expenses of preserving a bankrupt's estate payable before taxes are paid.**

     In the distribution of a bankrupt's estate, though Bankruptcy Act, § 64a (Comp. St. § 9648), gives payment of taxes priority over payment of dividends to creditors, the necessary and reasonable expenses of preserving the fund while in the custody of the court must be paid before taxes are paid, in view of Rev. St. 3191 (Comp. St. § 5913), authorizing the collector of federal taxes who sells property to first pay the expenses of sale.

In Bankruptcy. In the matter of the Wyley Company, bankrupt. On application by trustee for directions. Application granted.

Walter S. Dillon, C. H. Calhoun, and Hamilton Douglas, Jr., all of Atlanta, Ga., for trustee.

C. P. Goree, Asst. U. S. Atty., Roy L. Mitchell, and Underwood, Pomeroy & Haas, all of Atlanta, Ga., for State of Georgia.

SIBLEY, District Judge. The Wyley Company was adjudicated a bankrupt in August, 1922, and the estate reduced to cash and partially disbursed. In December, 1922, the United States claimed $3,975.51 as additional income taxes just assessed for the years 1918 and 1919, About $2,200 of this is admitted to be correctly assessed; the remainder is contested. State taxes amounting to $400 are likewise due. The estate in hand is only about $2,300, with most of the fees and expenses of administration unpaid. Direction is sought by the trustee touching the situation. The questions to be decided are: (1) The correct amount due the United States; (2) the priority of this amount over the state taxes; (3) its priority over expenses of administration.

[1] 1. The court has power to inquire into and fix the amount due as income taxes to the United States. Bankruptcy Act 64a (Comp. St. § 9648). The difference in dispute arises by reason of the company's tax returns having shown as salaries to its officers amounts largely greater than those shown by the individual returns of the officers to have been received by them. These officers were introduced as witnesses by the United States, and testified that the amounts really paid and received by them were the amounts they individually returned; whereas, the amounts deducted in the company's returns are those credited to them on the company's books as salaries accrued. The testimony is that the salaries were fixed by the directors at the amounts credited on the company's books. One witness says the salaries were based on a supposed profit, which, as it later developed, had not really been earned, and the salaries were not drawn because of this development. Another witness says the salaries were fixed absolutely, but not paid for want of ready cash. If the first witness is to be believed, the tax returns should be corrected to eliminate the supposed profit, which did not exist. If the other witness is correct, the returns being evidently made on the basis of accruals, rather than actual receipts and disbursements, the deduction of the amounts absolutely due these officers was correct, though they were never paid, and, of course, now never can be. In either event, the additional taxes assessed on account of these items is held to be erroneous and the true amount due the United States is to be fixed accordingly.

[2, 3] 2. Taxes due the United States and bankruptcies are alike wholly subject to the power of Congress. Congress may make such provisions for the payment of the one through the other as it sees fit. A tax has such lien and priority, and only such, as is given it by statute. 37 Cyc. 1138, 1143. The common-law preference of the sovereign is said not to exist in favor of the United States, save as continued by statutes. United States v. Bank of North Carolina, 6 Pet. 29, 8 L. Ed. 308. A lien is provided for federal taxes by R. S. § 3186 (Comp. St. § 5908), but no special priority is stated. Debts due the United States are given a first priority, apparently extending to cases of bankruptcy, by R. S. § 3466 (Comp. St. § 6372); but taxes are hardly to be considered debts (New Jersey v. Anderson, 203 U. S. 483,

492, 27 Sup. Ct. 137, 51 L. Ed. 284). Bankruptcy Act, § 64a, deals specifically with the payment of taxes from bankrupt estates, providing:

"The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors."

This lays the duty on the court to pay, perhaps without formal proof, all such known taxes, to the extent at least that funds are available, to the end that no arm of the government may be delayed or embarrassed in its revenue. The placing of this provision first in the section suggests that the payment is to be made before any of the payments afterwards provided for in section 64b, but the limiting words, "before payment of dividends to creditors," suggests a postponement only of such persons as are "creditors" and who are to have "dividends." The Supreme Court, in Richmond v. Bird, 249 U. S. 174, 39 Sup. Ct. 186, 63 L. Ed. 543, has held that a municipal tax having no lien under the state law is not to be paid before a valid lien protected by section 67d of the Bankruptcy Act (Comp. St. § 9651). This decision, however, is not helpful here, because under Georgia law all taxes have a lien and are to be "paid before any other debt, lien, or claim whatever." Code Ga., § 1140. There is no competition here between any but tax liens. Considering the dual nature of our government, and that neither the Union nor the states may destroy or hinder the other in their several functions, and all having equal need of their revenues, it is concluded that the intent of Congress was that there should be a pro rata payment upon all the taxes named in section 64a, when the available fund is not sufficient to pay in full, the taxes due the United States having no priority over the others.

[4] 3. The question remains: What fund is available? Is it all the money in the trustee's hands, or all that has ever been there, or only the net sum after paying the expenses of raising and preserving it? Varying answers have been given by the courts. Section 64a gives the payment of taxes express priority only over "dividends to creditors." The fees and expenses of officers of the court are hardly to be so described. On the other hand, there is no express priority over taxes given these in section 64b, as there was in the Bankruptcy Act of 1867 (14 Stat. 517). The fair conclusion is that Congress has not expressly and definitely dealt with the matter, but that it is to be controlled by general principles. On such principles the fund must pay its own expenses, when they cannot otherwise be met, no matter what the dignity of the lien upon it. This was ruled in the Fifth Circuit as to a fund exhausted by a lien in Gugel v. New Orleans Bank, 239 Fed. 676, 152 C. C. A. 510; the expenses to be paid, however, not being necessarily the whole expenses of bankruptcy, but only such as were reasonable and necessary to raise or preserve the fund. See In re Hansen & Birch, 292 Fed. 898, this day decided.

The same principle manifestly should be applied to a fund exhausted by tax priorities. In the case of state taxes varying costs are fixed by law for the collecting officers. Code Ga. §§ 1161, 1162. Sales are made through sheriffs and constables, whose fees and expenses are

fixed by general statutes. When these costs and expenses cannot be made out of the delinquent taxpayer, it has always been the practice to deduct them from the fund raised by a sale, and credit only the net balance on the execution, although no statutory authority for doing so exists, and although Code, § 1140, requires that taxes "be paid before any other debt, lien, or claim whatsoever." In the case of federal taxes, R. S. § 3191 (Comp. St. § 5913), expressly permits the collector who sells property to first pay the expenses of the sale. R. S. § 3207 (Comp. St. § 5929), provides for equitable proceedings to subject real estate to taxes. It is unthinkable that the costs of so doing are not to be paid from the fund, if no other source of payment exists.

Under R. S. § 3466, giving priority to debts due the United States, so far as I am informed, costs of administration have been always first paid. See U. S. v. Eggleston, 25 Fed. Cas. 979, No. 15,027. The expenses of collection of taxes, had no bankruptcy court intervened, may properly be considered in fixing fees and commissions, though that is of less weight in cases where the tax claims have not been presented or known until the costs and expenses have been incurred. In all cases due care will be observed to conserve the public revenues, but the reasonable and necessary expenses of raising, preserving, and disbursing the fund ought to be paid from it, the remainder only being available for distribution. See State v. Lovell, 179 Fed. 321, 102 C. C. A. 505, 31 L. R. A. (N. S.) 988, certiorari refused 219 U. S. 587, 31 Sup. Ct. 471, 55 L. Ed. 347, and cited with approval in Richmond v. Bird, 249 U. S. 174, 39 Sup. Ct. 186, 63 L. Ed. 543.

4. What remedy, if any, the tax officers have respecting sums paid out by the trustee before knowing of the tax claims will not now be considered, as no evidence touching such payments has been presented, and the reference to them in the pleadings is merely general, and no relief is sought by the tax officers at this time.

The referee will fix the exact amount due the United States, and the expenses proper to be charged according to the rulings of this opinion, and prorate the remainder among the several tax claims according to their amounts.