**In re GEORGE F. REDMOND & CO., Inc.**

(District Court, D. Massachusetts. January 12, 1927.)

No. 32868.

1. **Bankruptcy ⊗═346—Where amount of claim against bankrupt for additional income taxes is in dispute, court is not bound by commissioner's determination (Bankruptcy Act, § 64a [Comp. St. § 9648]).**

Under Bankruptcy Act, § 64a (Comp. St. § 9648), where amount of government's claim against bankrupt for additional income taxes is in dispute, the court is not bound by the determination of the commissioner.

2. **Bankruptcy ⊗═346—Government's claim against bankrupt brokerage concern for additional income taxes held properly denied.**

Government's claim against bankrupt brokerage concern for additional income taxes, based on determination of special agent of tax department, who endeavored to ascertain true net income by resorting only to the books of the company, showing cash receipts and disbursements, *held* properly disallowed by referee, in view of method used in computing tax and doubt whether company ever earned a legitimate profit.

In Bankruptcy. In the matter of the bankruptcy of George F. Redmond & Co., Inc. On review of order of referee denying claim of the United States for additional income taxes. Order disallowing claim affirmed.

Edwin H. Abbot, Jr., of Boston, Mass., for trustee.

Marcus Morton, Jr., Asst. U. S. Atty., of Boston, Mass., for the United States.

BREWSTER, District Judge. An order of Referee Black denying a claim of the United States government, presented against the bankrupt estate of George F. Redmond & Co., Inc., is before the court for review.

The claim is for additional income taxes assessed on the bankrupt's net income received during the years 1919, 1920, and 1921.

From the referee's certificate it appears that returns were seasonably made by the bankrupt for the years in question. The referee doubts the accuracy of these returns, but whether the inaccuracy was due to wrong methods adopted by the bankrupt, or to an erroneous application of correct methods, is not shown.

Shortly before bankruptcy proceedings were instituted, a special agent, representing the tax department, endeavored to ascertain the true net income by resorting only to the books showing the cash receipts and disbursements of the company. The referee holds, and I think correctly, that these results do not reflect the net income received by the bankrupt during these years. The referee finds:

"The cashbooks show very large receipts from customers for the purchase of securities and from brokers from the sale of securities. The books show large amounts paid to customers for securities sold and paid to brokers for securities bought. It is impossible at this time to determine the exact amount of these receipts and payments. No one can say that the net income, as computed by the revenue agent, is not substantially increased by, or even entirely due to, payments by customers for the purchase of securities for which the bankrupt was liable when it failed. It is significant, however, that on the date of the failure the bankrupt's liabilities exceeded its assets by $2,000,000.

"The only income which the bankrupt received during the years in question consisted of interest on customers' accounts and on money in banks, commissions on purchase and sales of securities, and gains on the sale of securities and on customers' accounts closed out. On these items the agent's report contains no statement whatever. The agent's report also omits any statement of the various operating expenses allowable to the bankrupt as deductions from income. The agent's report omits any reference to very large losses incurred by the bankrupt in the years 1919, 1920, and 1921, which have been proved in the course of hearings on this case."

[1, 2] The amount of the tax being in dispute, the court is not bound by the determination of the commissioner. Bankruptcy Act, § 64a (Comp. St. § 9648); New Jersey v. Anderson, 203 U. S. 483, 327 S. Ct. 137, 51 L. Ed. 284; In re Fisher Corp. (D. C.) 229 F. 316.

It may be true that the agent's method of ascertaining the net income was the only one open to him with the data available. In no case would it reach wholly satisfactory results; but when the method is applied to the income of a broker, where the transactions chiefly involve money belonging to customers or related to their securities, it is obvious that such a method would fall far short of even approximating the net taxable income of the broker.

The evidence before the referee would not have warranted him in finding that the bankrupt received during the years 1919, 1920, and 1921 the amount of additional net income upon which the additional tax was assessed. In fact, there is much reason to doubt whether the bankrupt received any part of that sum. The referee's observations on this aspect of the case are:

"The bankrupt company was mismanaged and robbed for years. It was never operated on a legitimate business basis. It is extremely doubtful if it ever showed a legitimate profit. Millions of dollars were received from its so-called customers, who were, in fact, nothing but misguided victims of the seductive literature broadcasted by this firm. In many instances the customers' money was withdrawn by officers of the company for their own use immediately upon its receipt. Many orders were never executed. Payments to customers were most frequently made out of receipts from new victims. From this wreckage the trustees have saved about $300,000, with which to pay victims' claims aggregating $2,000,000. Against this small salvage the government now presents a claim for additional taxes amounting to $226,000. This claim is based solely upon an estimate admitted to be incorrect and obviously wide of the mark. It is unsupported by any direct evidence, and I so find. In my opinion it is not a tax on income, but a levy on funds intrusted to this bankrupt by its unfortunate victims. If allowed, it will practically wipe out the assets of this estate, and will result in a virtual confiscation by the government of the small fund salvaged by creditors from their own money. Such a result would be shocking to justice and common sense."

From the records it would appear that these observations of the referee were fully justified, and I am satisfied that his action in disallowing the claim was a proper disposition of the matter.

The order disallowing the claim is affirmed.