HENDERSON COUNTY, N. C., et al. v. WILKINS.

In re FLEETWOOD OF HENDERSONVILLE HOTEL CORPORATION.

No. 3008.

Circuit Court of Appeals, Fourth Circuit.

Sept. 19, 1930.

O. V. F. Blythe, O. B. Crowell and C. D. Weeks, all of Hendersonville, N. C., for appellants.

A. Y. Arledge, of Hendersonville, N. C., for appellee.

Before PARKER, Circuit Judge, and WATKINS and SOPER, District Judges.

PARKER, Circuit Judge.

The Fleetwood of Hendersonville Hotel Corporation was adjudged a bankrupt on the 4th day of March, 1927. Its assets consisted of 115 acres of land within the corporate limits of Laurel Park in Henderson county, N. C., a partially completed 14-story hotel building situate thereon and a quantity of building material. This property had been listed for taxation in the year 1926 at a valuation of $250,000. Not having been returned for taxation for the years 1927 and 1928 by the trustee, or by any one interested in the estate, it was listed for these years by the officials of Henderson county and the municipality of Laurel Park at the same valuation, and taxes were assessed against it accordingly. Upon the petition of the trustee that the claim for taxes for these years be reduced by the court, the referee found that the actual value of the property was only $110,000, and ordered that the claim for taxes be allowed in accordance with the levies of the county and municipality for the years in question based on that valuation. The findings and order of the referee were approved and confirmed by an order of the District Judge upon a petition for review, and from this order the county and municipality have appealed.

On the question of valuation, it appears that the property of the bankrupt was valued by the appraisers of the bankrupt estate at $100,000. On September 2, 1929, it was sold for $110,000 after the city of Henderson-ville, near which the hotel property was situate, agreed to issue and deposit its bonds in the sum of $500,000 to be used in financing the completion of the hotel building. Affidavits were filed to the effect that the valuation of $250,000 fixed by the tax officials was a reasonable and fair valuation. This, however, was controverted by the affidavit and petition filed by the trustee. The sale at $110,000 was confirmed; and the referee found that the property could not have been sold even at that price, except as a result of the agreement on the part of the city of Hendersonville.

The first question raised by appellants is as to the power of the bankruptcy court to reduce the taxes assessed against the property in the hands of the trustee by the taxing officials of the county and municipality. We think, however, that here can be no doubt that the court has this power. Section 64a of the Bankruptcy Act (11 USCA § 104(a), provides: "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district or municipality, in the order of priority as set forth in paragraph (b) hereof: Provided, That no order shall be made for the payment of a tax assessed against real estate of a bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court. Upon filing the receipts of the proper public officers for such payments the trustee shall be credited with the amounts thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

Although the property in question was in the hands of the bankruptcy court when the taxes for 1927 and 1928 were levied, it was subject to taxation by the authorities of the county and municipality. Swarts v. Hammer, 194 U. S. 441, 24 S. Ct. 695, 48 L. Ed. 1060; Dayton v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190. It was the duty of the county and municipal authorities, however, to tax it according to its true value in money. Constitution of N. C. article 5, § 3; Code 1927, North Carolina, § 7971 (46). And, when a question arose as to whether it had been properly valued for purposes of taxation or not, this was a matter for the determination of the bankruptcy court under the statute quoted above, as the question involved was one as to the amount of the tax to be paid from the estate. It is well settled that in determining such a question the court is not concluded by the findings

of the taxing authorities. New Jersey v. Anderson, 203 U. S. 483, 493, 27 S. Ct. 137, 141, 51 L. Ed. 284; Truman, Treas., v. Thalheimer (C. C. A. 9th) 19 F.(2d) 468; In re Sheinman (D. C.) 14 F.(2d) 323; In re Simcox (D. C.) 243 F. 479; In re United Five and Ten Cent Store (D. C.) 242 F. 1005. Its action is not a review of the action of the taxing authorities or a proceeding to enjoin action by them, but a determination under the statute of the amount which should be paid on the claim for taxes from the assets of the estate in its possession. In re E. C. Fisher Corporation (D. C.) 229 F. 316, 318.

The case of New Jersey v. Anderson, supra, is directly in point. In that case the taxing authorities of New Jersey, upon failure of a corporation to make a report, had assessed against it a franchise tax upon the basis of $40,000,000 outstanding capital stock. The corporation was afterwards adjudged a bankrupt, and, upon objection to the claim filed for the taxes so assessed, the court of bankruptcy reduced it to the amount of tax assessable upon an outstanding capital stock of $10,000,000, which was the amount actually outstanding. In upholding this action, the Supreme Court said: "We do not think the finding of the state board is conclusive. The tax is to be assessed upon capital stock actually outstanding. It may well be doubted whether the board had power to tax any other stock. But be that as it may, § 64a specifically provides that in case any question arises as to the amount or legality of taxes, the same shall be heard and determined by the court, with a view to ascertaining the amount really due. We do not think it was the intention of Congress to conclude the bankruptcy courts by the findings of boards of this character, and that the claim should have been upon the basis of the capital stock actually outstanding."

In the case of In re Fisher, supra, Judge Morton, of the District of Massachusetts, in holding that a claim for taxes should be reduced on account of overvaluation of property made by the bankrupt, very pertinently said:

"The power explicitly given to the bankruptcy court to hear and determine 'any question' as to the 'amount or legality' of the tax would seem to imply that it is not bound by the action of the taxing authority, but may decide the question for itself; and the right is not limited by the statute to such questions as the bankrupt might still have raised against the tax at the date of the bankruptcy proceedings.

"There are strong reasons why such power and right should have been given to the bankruptcy court. Persons in failing circumstances are apt to be careless about their taxes, and not to take the necessary steps to protect themselves against improper taxation. In the case of corporations, compelled by statute to make a public return of their financial condition, there is great temptation to give that return an appearance favorable to the corporation, as was done in this case, in the hope of not impairing its credit. It was eminently just that, when taxes were given priority over other claims, general creditors should be protected against the depletion of the debtor's estate by payment of excessive or unjust taxes."

The point is made that the action of the court was not justified by the evidence; but this is so lacking in merit as hardly to justify discussion. The fact that the property was valued by the appraisers shortly after the bankruptcy at only $100,000, and that it sold some time later under very favorable circumstances for only $110,000, clearly justified the valuation of $110,000 placed thereon by the referee and approved by the court; and it is elementary that findings of fact by the referee having support in the evidence and approved by the trial judge will not be disturbed upon appeal unless clearly wrong.

A motion was made to dismiss the appeal, but same will be denied. While there was some irregularity in the procedure adopted, it sufficiently appears, we think, that the appeal was allowed within the statutory time, and, in such case, a formal order allowing same is not necessary. Goodwin v. Fox, 120 U. S. 775, 7 S. Ct. 779, 30 L. Ed. 815; In re Fiechtl (C. C. A. 7th) 107 F. 618; Chamberlain Trans. Co. v. South Pier Coal Co. (C. C. A. 7th) 126 F. 165; Cyclopedia of Federal Procedure, vol. 6, p. 116. The appellants did not docket the appeal in this court within the time required by the rules, but appellee did not, before it was docketed, make a motion to docket and dismiss. On the contrary, he entered into a stipulation fixing the contents of the record, and, after the appeal had been docketed at the return term, filed a brief on the merits. Not until the following term and on the day when the case was calendared for argument did he make the motion to dismiss. Under such circumstances, it is clear that the motion should be denied. Cyclopedia of Federal Procedure, vol. 6, p. 424; Gould v. U. S. (C. C. A. 8th) 205 F. 883; Love v. Busch (C. C. A. 5th) 142 F. 429; Incorporated Town of Gilman v. Fernald (C. C. A. 8th)

141 F. 941; The Kawailani (C. C. A. 9th) 128 F. 879.

It follows that the decree of the court below sustaining the findings and order of the referee will be affirmed.

Affirmed.