**In re SCHACH.**

No. 58047.

District Court, N. D. Illinois, E. D.

Dec. 4, 1936.

Lawlor, Walsh & Bernstein, of Chicago, Ill., for Trustee Maurice Klein.

HOLLY, District Judge.

Petition to review the order of Charles True Adams, referee, concerning the claim of the county collector of the county of Cook for certain taxes.

The county collector of Cook county, Ill., filed his petition in this proceeding for the payment of taxes due on certain real estate of the debtor as follows:

|      | Full Value | Assessed Value | Tax |
|------|-----------|----------------|-----|
| 1931 | $88,765.  | $32,845.       | $2,489.66 |
| 1932 | 66,573.   | 24,635.        | 1,946.20 |
| 1933 | 66,573.   | 24,635.        | 1,657.96 |
| 1934 | 66,573.   | 24,635.        | 1,766.36 |

The trustee answered said petition alleging in his answer that the assessment of the property upon which the taxes were based was fraudulent, excessive, and void; that the taxes are based upon certain levies which are illegal and void; and that the county collector was claiming certain penalties to which he was not entitled.

The trustee contends under the provisions of 64a of the Bankruptcy Act, as amended (11 U.S.C.A. § 104(a), this court has the power to revise and reduce the tax claimed if it shall find that the valuation of the property as fixed by the assessor was in excess of its real value.

The Constitution of the State of Illinois provides (article 9, § 1) that "the general assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct." The statutes of the state provide (Smith-Hurd Revised Statutes, c. 120, sec. 4) that in the assessment for purposes of taxation, "each tract or lot of real property shall be valued at its fair cash value, estimated at the price it would bring at a fair, voluntary sale." The statute provides for the appointment of an assessor who by himself or his deputy is required to view the property and separately value the land and buildings. Assessments of real estate are made quadrennially, but the assessor has power annually to revise or correct the assessment as shall appear to him to be just upon complaint in writing by the taxpayer. A Board of Appeals is established, and this board has authority upon application of the taxpayer to revise the assessment made by the assessor, and if it finds that the property is overvalued to reduce the assessment.

A regular quadrennial assessment of real estate in Cook county was made in the year 1927, but in the following year the State Tax Commission, finding that assessment unfair and unjust, ordered a complete new assessment. In 1932, the assessment was reduced and this assessment continued during the years 1932, 1933, and 1934. It is of the assessment for 1931, 1932, 1933, and 1934 that complaint is made by the trustee.

Upon the hearing one Harry S. Cutmore, a real estate expert, whose qualifications are unquestioned, testified in behalf of the trustee that the value placed upon the real estate of the debtor by the assessor was too high; that it was a one-purpose property, the building being a two-story garage. Prior to 1931 the full value had been fixed at $136,081, but in 1931 the assessment was reduced to $88,765. In 1932, a further reduction was made by the assessor, and for that year and 1933 and 1934 the full value was fixed at $66,573. By the terms of the Revenue Act of Illinois, the assessor fixes the true value, and 37 per cent. of that is taken as the "assessed value," and it is upon that value that the tax is levied.

The witness Cutmore, at the request of the trustee, had recently viewed the property and made a reappraisal of its value. It was, in his opinion, a one-purpose property so that the only fair approach to its fair cash value would be from an "economic stand point" a value based upon the earning capacity of the property. The garage industry, in his opinion, was a sick industry, and the maximum monthly income per car stored in this garage would be $3 per month. As the garage had a capacity of 200 cars, the total monthly income would be $600. He estimated the operating expenses at $2,210 a year, which would leave a net income of $4,990. Capitalizing that at 9 per cent., which he considered a fair rate for that type of speculation or risk, indicated a value of $55,444, which he considered a fair cash value of the property in 1931. For each of the subsequent years, taking into consideration the reduction made by the assessor, the value would be 75 per cent. of that year.

It appeared on cross-examination that the witness was director of revaluation for the county of Cook when all the real estate was reappraised in 1928 under the orders of the State Tax Commission. The city of Chicago was divided into districts, and maps with tentative unit values were prepared. After the preparation of these maps meetings of the property holders were called to discuss the values. The maps were afterwards presented to the board of assessors and the work of finally appraising value was all done under the rules of the State Tax Commission. In valuing buildings there were rules for depreciation which included not only the age of the building, but also its condition and "percentage good." Lack of utility and obsolescence were also considered. That system was used under the supervision of the witness in 1928 and has ever since been used. The original assessment by the particular assessor assigned to the district was checked by a trained supervisor who had been instructed in schools or classes. When the 1931 assessment was made, the valuation was fixed in the same manner and the witness was the chief deputy assessor, and the assessment was made in the same way.

It will be seen from the above statement of facts that the statutes of Illinois furnish the machinery for a fair valuation of property and the means of redress for the taxpayer. If through fraud or mistake the property is overvalued, an appeal lies to a Board of Tax Appeals. In the present case it appears that an honest effort was made by the assessor to ascertain the true value and no attempt was made by the owner of the property to have the valuation of the assessor reviewed. The trustee, however, insists that under section 64a of the Bankruptcy Act the trustee is not bound by the appraisal made by the assessor's office, even though no effort is made to secure a revision of the assessor in the manner provided by the laws of Illinois, but that this court may proceed to appraise the property, and if it finds that the valuation fixed by the assessor is too high may reduce the amount of the tax. This power the trustee finds in the phrase in section 64a (11 U.S.C.A. § 104(a), that "in case any question arises as to the amount or legality of any such tax·the same shall be heard and determined by the court."

There are many cases in ·which the power of the bankruptcy court under section 64a have been discussed. All of these cases have been reviewed by the referee in his report, and only three in his opinion, in which I concur, have any real bearing upon the question presented here. The three are New Jersey v. Anderson, 203 U. S. 483, 27 S.Ct. 137, 141, 51 L.Ed. 284, Henderson County v. Wilkins (C.C.A.) 43 F.(2d) 670, 671, and In re Gould Mfg. Co. (D.C.) 11 F.Supp. 644.

New Jersey v. Anderson, supra, seems to me not in point. The Cosmopolitan Power Company was a corporation organized under the laws of New Jersey. Its authorized capital ·stock was $40,000,000, of which $10,000,000 had been issued. In May, 1902, its stock was reduced, pursuant to the laws of New Jersey, to $2,500,000. The laws of the State provided for the imposition of a tax upon the capital stock issued and outstanding of corporations organized under the laws of that State. The state board assessed the tax upon the basis of the authorized capitalization, instead of the amount actually outstanding. The court held that the finding of the state board ·was not conclusive. The court said: "The tax is to be assessed upon capital stock actually outstanding. It may well be doubted whether the board had power to tax any other stock. But be that as it may, § 64a specifically provides that in case any question arises as to the amount or legality of taxes, the same shall be

heard and determined by the court, with a view to ascertaining the amount really due. We do not think it was the intention of Congress to conclude the bankruptcy courts by the findings of boards of this character, and that the claim should have been upon the basis of the capital stock actually outstanding."

There, as the Supreme Court held, the tax was illegal as to $30,000,000 of the stock. It was not the question of the *amount* of the tax which was involved, but the *legality* of a part of the tax. The board had taxed that which it had no authority to tax. The amount levied was correct if the board had power to lay a tax upon the whole of the authorized capitalization.

In re Gould Mfg. Co., supra, is directly in point in this case. There a tax had been levied upon real estate based upon an assessment. The trustee contended that the property had been overvalued by the assessor and that the amount of the tax levied was excessive. Judge Geiger in an exhaustive opinion reached the conclusion that a court of bankruptcy has no power to reassess the value of the property and to reduce the amount of the tax if it finds that the assessing bodies have overvalued it. With this conclusion I fully agree. It is not the function of the bankruptcy court to act as a board of revision to supervise the legally constituted assessing bodies.

The case of Henderson County v. Wilkins, supra, decided by the Circuit Court of Appeals for the Fourth Circuit, remains to be considered. There the assessor had appraised the real estate of the bankrupt and fixed its value at $250,000. The trustee filed objections to the claims of the county for taxes and upon the hearing the referee found the value to be $110,-000. The appraisers appointed to appraise the bankrupt's estate had valued the real estate at $100,000 and it was afterward sold for $110,000. The court held, citing as authority to sustain its position New Jersey v. Anderson, supra, that: "* * * when a question arose as to whether it had been properly valued for purposes of taxation or not, this was a matter for the determination of the bankruptcy court under the statute quoted above, as the question involved was one as to the amount of the tax to be paid from the estate. It is well settled that in determining such a question the court is not

concluded by the findings of the taxing authorities."

This holding by the Circuit Court of Appeals does not appear to me to be justified by the decision in New Jersey v. Anderson, supra, and is, I believe, erroneous.

It seems to be the theory of counsel for the trustee that if the court does not assume authority to review the assessment made by the assessor, the words of the proviso in section 64a giving the court power to hear and determine any question which may arise "as to the amount * * * of any such tax" are rendered meaningless. It does not seem so to me. The tax levied may be perfectly valid, yet through clerical errors made by the assessors, or the authorities having charge of the extension of the taxes after the assessment and the levies by the taxing bodies have been made, the amount for which the claim is filed may be excessive. Such errors the court, under the proviso, has power to correct.

Some other questions were passed upon by the referee, but as to those there is no controversy.

The report of the referee will be approved.