105 F.2d 704 (1939)
In re 168 ADAMS BLDG. CORPORATION.
STEINBRECHER
v.
TOMAN, County Treasurer.
No. 6927.
Circuit Court of Appeals, Seventh Circuit.
June 29, 1939.
Rehearing Denied July 24, 1939.
*705 *706 Dwight S. Bobb, Arthur J. Hughes, Charles S. Macaulay, and Herman C. Nagel, all of Chicago, Ill., for appellant.
Thomas J. Courtney, of Chicago, Ill., for appellee.
Before SPARKS, MAJOR, and KERNER, Circuit Judges.
KERNER, Circuit Judge.
This appeal was taken from an order of the District Court, entered in a reorganization proceeding under Section 77B of the Bankruptcy Act as amended, 11 U.S.C.A. § 207, which overruled the trustee's objections to the tax claim of the county collector of Cook County. The trustee objected to the tax claim on the theory that the assessments were so excessive as to be fraudulent. The collector moved to strike these objections on the ground that the court had no power to review the assessor's valuation in the absence of fraud. The court overruled the objections and allowed the claim.
The debtor is an Illinois corporation organized for the purpose of owning and operating a building in the Loop district of Chicago. The building, situated at 168 W. Adams street, is a modern 22-story structure with stores and shops on the ground floor, space designed for club purposes on the first six floors, and space designed for office purposes on the remaining floors. Since 1934 the club portions of the building have been leased for hotel and office purposes.
Because the debtor had never earned sufficient income to meet operating expenses plus taxes, section 77B proceedings were started and a plan of reorganization finally approved, under which a new corporation, the "Midland Building Corporation," was organized to succeed the debtor. Under the plan approved by the court the bondholders and creditors of the debtor surrendered their claims and became stockholders in the successor corporation. Then the assets of the debtor were transferred to the successor, which took subject to the tax liability consisting of accrued and unpaid taxes from 1928 through 1937. The plan also provided that the court was to retain jurisdiction over the new corporation and its property until delinquent taxes were paid.
This appeal involves the validity of claims filed for general taxes from 1928 through 1937. The trustee objected to the claims on the ground that the tax assessments were grossly excessive and amounted to fraud, contending that the cash value of the debtor's property at a fair voluntary sale did not exceed $750,000. In particular, the objector maintained that the value "should be determined when no actual sales are available by capitalizing the net income," especially in the instant case where the operating income has never been sufficient to meet taxes and depreciation charges, and that this method of valuation would indicate a value not exceeding $750,000.
We note at this time that the capitalization of income method is usually given paramount consideration in utility cases. City of Detroit v. Detroit & Canada Tunnel Co., 6 Cir., 92 F.2d 833, 837; Parsons v. Detroit & Canada Tunnel Co., D.C., 15 F.Supp. 986, 997. However, in the assessment of real property, Parsons case, supra, 15 F.Supp. page 998, especially real property in the Loop district of Chicago, accepted standards of valuation proceed primarily on the basis that value cannot be determined by the income circumstance alone. In this connection it might be added that, since the property in question has operated at a loss since 1928, there are in fact no earnings to capitalize.
In addition, the objector reasoned that the assessor and Board of Appeals have continually refused "to fix a valuation based upon income," and that they have intentionally used a "fundamentally erroneous method," namely, the depreciated cost reproduction method. This procedure by the assessor and the Board of Appeals, so the objector states, has produced grossly excessive valuations in effect amounting to fraud. In this connection, the record, consisting of the objections and the motion to strike (which in effect admits the facts alleged in the objections), reveals some interesting data.
In 1928, 1929, and 1930 the assessor valued the debtor's property, which had just been built, around $3,220,000. In 1931 he reduced this value to around $2,400,000, while in 1932, 1933, and 1934 he decreased the value again and set it around $1,800,000 which, to use the language of *707 the objector, represented "a general cut in the valuation of all properties." As we already know, in 1934, the debtor came within the jurisdiction of the court, and, in 1935, 1936, and 1937 the sum of $57,807.59 in taxes was saved, when complaints filed with the Board of Appeals received consideration.
So we find that in 1935 and 1936 the value was reduced to $1,530,000 and in 1937 to $1,380,000, which means that from 1928 through 1937 continual adjustments in the value cut it from $3,220,000 to $1,380,000. In other words, during these years the assessor and the Board of Appeals in their discretion reduced the value of the debtor's property $1,840,000, a reduction of 42 percent. This 42 percent reduction would seem to indicate that the assessor considered among other things the changed business conditions of that period. In fact, the complaints filed with, and favorably considered by, the Board of Appeals were premised on the logic that "income and expenses were not considered in determining the fair cash market value for tax purposes."
Section 64a provides that the court shall pass on the validity of taxes for the purpose of allowing or disallowing tax claims against the estate of the bankrupt. 11 U.S.C.A. § 104(a). In particular, this section authorizes the court to order the payment of "all taxes legally due and owing," and empowers it to determine the "amount or legality" of any tax which might be questioned.
We are convinced from our study of the matter, and the District Court so decided, that the court either operates under Section 64a by implication, 11 U.S.C.A. § 207(k), Cf. City of Springfield v. Hotel Charles Co., 1 Cir., 84 F.2d 589, 591, or exercises the same power to pass upon similar tax claims from necessity. Settling the validity of tax claims in proceedings to reorganize corporate debtors is as necessary as in proceedings to liquidate corporate debtors, 11 U.S.C.A. § 207(k), or to liquidate individual bankrupts, 11 U.S. C.A. § 104(a).
Much uncertainty exists in the cases as to the nature and extent of the power thus conferred upon the courts by the Bankruptcy Act. Dickinson v. Riley, 8 Cir., 86 F.2d 385, 387; In re Gould Mfg. Co., D.C., 11 F.Supp. 644. But of one conclusion we are confident. We believe, as did the District Court, that the court does not have the power to revise taxes "legally due and owing," by reassessing the value of the property. We can not conceive, nor do we see the necessity for, a construction of the present Bankruptcy Act, which would empower the court to scale down valid taxes purely for the purpose of relieving delinquent debtors.
We do conceive, however, and believe that when a tax claim is contested, usually on the theory that the tax is not "legally due and owing," the court must first pass on the validity of the tax before it can decide whether to allow or disallow the claim against the estate of the debtor. In addition, our construction of the Act compels the court to determine the validity of the tax in accord with the laws of the taxing sovereign. We know that a tax is no better and no worse than the laws of the taxing sovereign make it. To test the validity of the tax by any other standard is neither fair nor logical. We believe, therefore, that to determine the validity of tax claims under the Act the court must measure the validity of the tax by the laws of the taxing sovereign.
Article IX, Section 1 of the Constitution of the State of Illinois, Smith-Hurd Stats., provides that "the general assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property  such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise." The statutes of the State, Chap. 120, Sec. 4 Ill.Rev.St. State Bar Assn. Ed. 1937, provide that in the assessment for purposes of taxation, "each tract or lot of real property shall be valued at its fair cash value, estimated at the price it would bring at a fair, voluntary sale." It also provides (supra, Secs. 282, 288, 293) for the appointment of an assessor who by himself or his deputy is required to view the property and separately value the land and building. Assessments of real property are made quadrennially, but the assessor has the power annually to revise or correct the assessment as shall appear to him to be just upon complaint in writing by the taxpayer. A Board of Appeals, supra, Sec. 311a, is established, and this board has authority, upon application of the taxpayer, to revise the assessment *708 made by the assessor, and, if it finds that the property is overvalued, to reduce the assessment, supra, Sec. 314a.
Fair cash value means what the property would bring at a voluntary sale where the owner is ready, willing, and able to sell but not compelled to do so, and the buyer is ready and willing and able to buy but not forced so to do, as of April 1 in the year in which the assessment is made. Assessed value, for taxation purposes, cannot be impeached merely because the assessor and the court might differ as to the value of the property, People v. Wilson, 367 Ill. 494, 496, 12 N.E.2d 5, and the courts will not set aside, or interfere with, the exercise by taxing authorities of their power to assess property, nor review the methods by which, in the exercise of such power, they arrive at the value of property for tax purposes, except in cases clearly falling within recognized limitations of that power, Parsons v. Detroit & Canada Tunnel Co., supra, 15 F.Supp. page 994.
In the instant case the objector, appellant here, maintained that the claim should not be allowed, because the tax is invalid as a violation of Illinois law and as an offense to due process. The claimant-appellee moved to strike the objections, which challenged the legal sufficiency of the objections. On this record the District Court overruled the objections and allowed the tax claim. To us this exercise of the power to allow was a necessary consequence of the court's decision that under the Bankruptcy Act the tax (upon which the claim was based) was "legally due and owing," i. e., valid. We believe, and we shall explain below, that the District Court's decision was supported by the record.
The appellant rested invalidity of the tax solely on the ground that the valuation was excessive, and so the District Court interpreted his objections. Among other things, already sufficiently discussed, the facts in the instant case disclose a 42 percent reduction in assessments from 1928 through 1937 and a reduction in taxes by the Board of Appeals in answer to a complaint alleging that income and expenses had not been considered as a factor in the value process. See Great Northern Ry. v. Weeks, 297 U.S. 135, 149, 151, 56 S.Ct. 426, 80 L.Ed. 532.
Nor is the present case one where there has been discrimination in the valuation of the debtor's property as compared with that of other property in the Loop district. People's Gas Light & Coke Co. v. Stuckart, 286 Ill. 164, 167, 172, 121 N.E. 629; People v. Keokuk & Hamilton Bridge Co., 287 Ill. 246, 248, 250, 122 N.E. 467; Aldrich v. Harding, 340 Ill. 354, 358, 359, 172 N.E. 772; People v. Wiggins Ferry Co., 357 Ill. 173, 174, 176, 191 N.E. 296; People v. Gillespie, 358 Ill. 40, 44, 192 N.E. 664. Nor is this a case where the assessing bodies have refused to consider pertinent evidence. People v. Stewart, 315 Ill. 25, 30, 145 N.E. 600; People v. St. Louis Bridge Co., 357 Ill. 245, 252, 254, 191 N.E. 300, and People v. Wilson, supra.
The allegations of fact contained in the objections are clearly insufficient under the Illinois law. There is no showing of lack of good faith or that the assessor had not made a thorough investigation of the fair cash value of the property and there is a distinct failure to show that the valuation of the debtor's property was so excessive, when compared with the valuation of other property, as to amount to a fraudulent assessment. Pacific Hotel Co. v. Lieb, 83 Ill. 602, 611, 612. The Illinois law requires a fraudulent overvaluation, as distinguished from a mere overvaluation, People v. Chicago Union Lime Works, 361 Ill. 304, 308, 198 N.E. 1, and in the absence of fraud, the courts have no power to review the valuation of property made by the proper officers for purposes of taxation. People v. Charles H. Besley & Co., 353 Ill. 472, 475, 187 N.E. 461; see, also, Illinois cases, supra.
In reality, the test is the presence or absence of inequality in the tax burden among property owners. The law, in other words, does not condemn a nondiscriminatory tax valuation simply because it is excessive. This is even more true when the non-discriminatory tax value is excessive, only when compared with a value obtained solely by capitalizing a hypothetical income figure.
Nor do non-discriminatory excessive valuations violate the due process clause. U.S.C.A.Const. Amend. 14. The Supreme Court of the United States, in Rowley v. Chicago & N. W. Ry., 293 U.S. 102, 111, 55 S.Ct. 55, 59, 79 L.Ed. 222, expressed itself in this way: "Overvaluation resulting from error of judgment will not support a claim of discrimination. *709 There must be something that amounts to an intention, or the equivalent of fraudulent purpose, to disregard the fundamental principle of uniformity. * * * There was no discrimination against respondent by undervaluation of the property of others," and in Sunday Lake Iron Co. v. Wakefield, 247 U.S. 350-353, 38 S.Ct. 495, 62 L.Ed. 1154: "Mere errors of judgment by officials will not support a claim of discrimination. There must be something more  something which in effect amounts to an intentional violation of the essential principle of practical uniformity."
Clearly the tax upon which the claim is based is valid, and for this reason the District Court's overruling of the objections was proper.
We disagree with counsel for the appellant, when he argues that we are limited on this appeal solely to answering whether the court under Section 77B has the power to consider objections of excessive overvaluation made to a tax claim. The Act provides that the court shall allow a tax "legally due and owing," and, by implication, that the court shall not allow a tax not "legally due and owing." The objections and motion to strike raised a question of law as to whether the tax claim was valid, as far as the Bankruptcy Act was concerned. The court decided this issue of law when it allowed the tax claim as "legally due and owing." For the reason stated in this opinion, we believe that the court properly allowed the claim.
Judgment affirmed.