In re MONONGAHELA RYE LIQUORS,
Inc., et al.

Nos. 8475, 8505.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 6, 1944.

Decided March 27, 1944.

A. J. Rosenbleet, of Pittsburgh, Pa. (James H. Duff, Atty. Gen., on the brief), for the Commonwealth.

A. E. Kountz, of Pittsburgh, Pa. (Kountz, Fry, Staley & Meyer, of Pittsburgh, Pa., on the brief), for trustee in bankruptcy.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

Each of the bankrupts above named respectively filed with the District Court on the same day a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Because of prior commingling of the assets, debts and business affairs in general of the several corporate petitioners, the reorganization proceedings were later consolidated by order of court. A satisfactory plan of reorganization not having materialized, the petitioners were thereafter duly adjudged bankrupt and a trustee of their estates in bankruptcy was appointed.

The Commonwealth of Pennsylvania filed proofs of claim with the referee in the bankruptcy proceeding for taxes in specified amounts allegedly due it by each of the bankrupts. The claims thus made were for capital stock, corporate loan and corporate income taxes for the year of the bankruptcy and for four years prior thereto. The tax claims were based upon estimates of liability which had been made by the Pennsylvania Department of Revenue with the approval of the State Auditor General upon failure by the corporations to file proper returns.

About the time of the filing of the Commonwealth's tax claims in the bankruptcy proceeding, the trustee filed with the Board of Arbitration of Claims (an administrative board in the Pennsylvania Auditor General's Department) a claim, which was later amended, for a large sum of money allegedly due the bankrupts for liquors sold and delivered by them to the Pennsylvania Liquor Control Board, a State instrumentality having control of the purchase and sale of liquors in Pennsylvania. See 47 P.S. § 744—1 et seq. The Commonwealth filed an answer to the claims of the trustee and a counterclaim for damages in an amount in excess of the trustee's claims. The damages for which the Commonwealth counterclaimed before the Board of Arbitration were alleged to have been caused the State Liquor Control Board by reason of its allegedly necessary resale of the liquors in question at a loss because of an asserted shortage in the bottle fill due to the wrongful conduct of the bankrupt corporations. Before a hearing was had before the Board of Arbitration of Claims on the merits of the liquor controversy, the trustee in bankruptcy, upon application, withdrew from the Board of Arbitration his claim against the Commonwealth.

Contemporaneously, the trustee filed with the referee objections to the tax claims of the Commonwealth and petitioned for their redetermination by the bankruptcy court under the provisions of Sec. 64, sub. a (4) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(4). The trustee averred substantially that the amounts of all of the Commonwealth's claims for taxes for the year of the bankruptcy were dependent in part upon the validity and fair value of the claims of the bankrupts against the Commonwealth for the liquor sold and delivered by them to the Liquor Control Board; that the corporate loans subject to tax were much less than the amount shown on the proofs of claim; that the claims for tax on corporate loans and net income were excessive; and that the income and capital stock tax items were based, in part at least, upon arbitrary assessments and could not be accurately determined until the trustee's counterclaims were paid, reduced, or determined never to have accrued. In his objections to the Commonwealth's tax claims the trustee in bankruptcy also sought set-off or recoupment for the bankrupts' claims for the liquor sold and delivered to the Liquor Control Board. This claim of set-off was the same claim that had been filed by the trustee with the

Board of Arbitration of Claims and thereafter withdrawn.

To the objections filed by the trustee with the referee the Commonwealth of Pennsylvania filed a motion to dismiss under Rule 12 (b) and a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the grounds as summarized by the referee, "(1) that the [bankruptcy] court has no jurisdiction to redetermine the legality or the value of the various tax claims, (2) that the court lacks jurisdiction of the counterclaim, (3) that the counterclaim fails to state a claim against the Commonwealth upon which relief can be granted, (4) that the alleged recoupment is not a defense arising out of the transaction upon which the Commonwealth's claim is grounded, (5) that the Pennsylvania statutes provide a procedure to determine the legality of a claim against the Pennsylvania Liquor Control Board and (6) that the tax claims have a priority status while the counterclaim has a different status."

The questions thus raised fall into two groups, viz., (1) whether the bankruptcy court had jurisdiction to pass upon and redetermine the Commonwealth's tax claims and (2) whether the trustee had a right of set-off or recoupment against the Commonwealth's tax claims for alleged causes of action not related to the Commonwealth's claims. The referee, in an exhaustive and well reasoned opinion, upheld the power of the bankruptcy court to redetermine the Commonwealth's tax claims under the circumstances here obtaining, but denied the trustee a right of set-off or recoupment for the bankrupts' independent claims against the Commonwealth and entered an order accordingly. Both the Commonwealth and the trustee filed petitions for review. The District Court sustained the action of the referee for the reasons contained in the opinion of the latter. The respective pending appeals followed.

Prior to the decision by the Supreme Court in Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, it had been pretty generally considered that a bankruptcy court possessed broad power in the matter of reviewing and redetermining claims for taxes allegedly due by a bankrupt. See 2 Remington on Bankruptcy (1940) § 799, and 6 ibid. § 2804; 3 Collier on Bankruptcy (1941) p. 2143, et seq. The leading decision was New Jersey v. Anderson, 203 U. S. 483, 27 S.Ct. 137, 51 L.Ed. 284. The power has been exercised by courts of bankruptcy a number of times.[1] And so far as any conflict existed in the decisions, it would seem to have been limited to the power of a bankruptcy court with respect to a redetermination of the taxable valuation ascribed to real estate by local taxing agencies.[2]

The Chandler Act, to which the instant case is subject, not only appears not to have taken away or restricted whatever may have been a bankruptcy court's jurisdiction to redetermine tax claims but, on the contrary, seems to indicate more clearly the existence of the power. Subdivision a of Sec. 64 of the Bankruptcy Act of 1898, 30 Stat. 563, had provided that "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality in advance of the payment of dividends to creditors, * * * and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court." The taxes so ordered to be paid were, by amendment of 1926, 44 Stat. 666, 667, given priority of payment in category (6) of subdivision (b) of former Sec. 64. But in the Chandler Act Sec. 64, sub. a of the earlier Act was eliminated, Sec. 64, sub. a of the Amendment, 52 Stat. 874, being devoted to priorities and their order of payment. Under category (4) of that subdivision, as amended, 11 U.S.C.A. § 104, sub. a(4), priority is now accorded "taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof: * * * provided further, That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court; * * *." But, the former requirement of

---

[1] E.g. Cohen v. United States, 1 Cir., 115 F.2d 505; In re Acme Traffic Signal Co., D.C.Cal., 37 F.Supp. 352; In re George F. Redmond & Co., D.C.Mass., 17 F.2d 128; In re Sheinman, D.C.Pa., 14 F.2d 323; In re Wyley Co., D.C.Ga., 292 F. 900; In re W. P. Williams Oil Corporation, D.C.Ky., 265 F. 401.

[2] Compare Henderson County, N. C., v. Wilkins, 4 Cir., 43 F.2d 670, with Steinbrecher v. Toman, 7 Cir., 105 F.2d 704.

Sec. 64, sub. a, that the bankruptcy court should order the trustee to pay all taxes legally due and owing by the bankrupt was entirely dispensed with in the Chandler Act. At the same time, former Sec. 57, sub. n, was amended, 11 U.S.C.A. § 93, sub. n, so as to require that all claims due the United States or any State should be filed and proved like other claims against bankrupt estates. In the light of a bankruptcy court's jurisdiction under Sec. 2 of the Act, 11 U.S.C.A. § 11, to allow, disallow, or reconsider claims against bankrupt estates, the plain implication from the requirement in Sec. 57, sub. n, as amended, that tax claims should be filed and proved as in the case of other claims, is that such tax claims are subject to hearing and determination by the bankruptcy court.

Generally speaking, therefore, we think that a bankruptcy court has the power to redetermine tax claims in the exercise of its jurisdiction under the Chandler Act. But we also think that certain factual determinations in respect of such claims, when competently made in another forum, may be conclusive at a hearing thereon in a bankruptcy court. Such we believe is indicated by a comparative reading of the decisions in New Jersey v. Anderson and Arkansas Corporation Commission v. Thompson, supra.

In the Anderson case, New Jersey had imposed a franchise tax upon domestic corporations of a certain percentage on the amount of a corporation's issued and outstanding capital stock on the first of January in each year. If any corporation failed to make a return, the State Board of Assessors was authorized to ascertain and fix the amount of the tax. Prior to the bankruptcy of the corporation involved in the Anderson case, it had an authorized capital stock of $40,000,000, but only $10,000,000 of such stock was outstanding. The corporation not having made a return, the State Board of Assessors assessed a tax against the corporation on the basis of its $40,000,000 authorized capital stock; and, after the bankruptcy of the corporation, the State presented its tax claim in the amount assessed by the State Board of Assessors. The referee reduced the State's claim by computing the tax on the basis of the capital stock actually outstanding. The referee's action in such regard was ultimately affirmed by the Supreme Court, that Court saying, 203 U.S.

at pages 493, 494, 27 S.Ct. at page 141, 51 L.Ed. 284, "* * * § 64a specifically provides that in case any question arises as to the amount or legality of taxes, the same shall be heard and determined by the court, with a view to ascertaining the amount really due. We do not think it was the intention of Congress to conclude the bankruptcy courts by the findings of boards of this character, * * *." In that regard the opinion would seem to have been the unanimous view of the Court. The dissenting Justices did not question the bankruptcy court's power to redetermine the State's tax claim. They would have denied the claim priority of payment (in whatever amount it was allowed) because it did not represent "in reality 'taxes,' as distinguished from governmental exactions for [corporate] privileges granted."

In the Thompson case, upon which the Commonwealth of Pennsylvania largely relies as support for its pending appeal, a different situation was presented. There, in a proceeding for the reorganization of a railroad under Sec. 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, the State of Arkansas presented a tax claim based on a property valuation for the railroad which had been ascertained by the Arkansas Corporation Commission, a quasi-judicial body, charged by the law of that State with the duty of determining such valuations. The State Commission's determination had been made only after due hearing in which the trustee in bankruptcy had participated and had been fully heard, including his motion for a rehearing which the Commission considered and overruled. Nor did the trustee seek a review of the assessment in the courts of the State, as he was entitled to do, even by appeal to the highest court of the State. But, several months after the determination had become final under the law of the State, the trustee petitioned the bankruptcy court to determine the "amount or legality" of the Arkansas tax by revising the property value found by the State's Corporation Commission. It was in that situation that the Supreme Court said (313 U.S. page 142, 61 S.Ct. 891, 85 L.Ed. 1244) that there was nothing in Sec. 64, sub. a (4), of the Chandler Act to indicate "that taxpayers in bankruptcy or reorganization are intended to have the extraordinary privilege of two separate trials, one state and one federal, on an identical issue of controverted fact—the value of the property taxed."

The Supreme Court further pointed out in the Thompson case that the legality of the action of Arkansas in entrusting the determination of valuations to its Corporation Commission was not, and could not be, challenged, and said that if the Commission properly found the value of the property, the amount of the taxes was not open to question as it was not asserted that the Commission had made an improper arithmetical computation in applying the legal rate to the determined property value. It was "in this respect, as well as with regard to the dissimilar duties and functions of the state administrative agencies involved, that * * * [the Thompson] case differs from that of New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 141, 51 L.Ed. 284 * * *." Under the New Jersey law the assessors had acted ministerially and not judicially, while under the Arkansas law the Corporation Commission had acted quasi-judicially and not ministerially.

■ The view we take of the decision in the Thompson case is that where, after a hearing, a quasi-judicial body, thereunto duly empowered, determines the amount of a tax due, with the right on the part of the taxpayer to a judicial review of the determination, all conformable with the requirements of due process, such determination, upon becoming final by operation of law, is conclusive upon a court of bankruptcy save for mathematical error in the computation of the amount of the tax or legal error in its assessment. Cf. In re 168 Adams Building Corporation, D.C., 27 F.Supp. 247, 249, 250, affirmed sub nom. Steinbrecher v. Toman, 7 Cir., 105 F.2d 704, certiorari denied 308 U.S. 623, 60 S.Ct. 378, 84 L.Ed. 520; In re Schach, D.C., 17 F.Supp. 437, 438, 439; In re Gould Mfg. Co., D.C., 11 F.Supp. 644, 649. In Lyford v. City of New York, 137 F.2d 782, 786, the Court of Appeals for the Second Circuit said that "* * * the effect of the Thompson case is, in any event, to restrict the court to finding if the tax is legally due and to deny it power to review the action of a quasi-judicial taxing body in setting, after due hearing, a valuation of property for tax purposes." And, again, in Re Hotel Martin Co. of Utica, D.C., 41 F.Supp. 392, 394, it was said that "The Arkansas case, supra, illustrates the law relative to real property assessments by state or local authorities where the review of the assessments as provided by law was not taken."

■ The question in any instance, therefore, is whether the circumstances necessary to justify an exercise of bankruptcy's power to redetermine a tax claim are present. We think they are in the instant case. The taxpayer having failed to file a return, the tax assessments against it were based upon estimated "settlements" arbitrarily made by the State's Department of Revenue without hearing the taxpayer. The pertinent Pennsylvania statute, viz., the Fiscal Code of 1929, P.L. 343, as amended by the Act of February 2, 1937, P.L. 3, 72 P.S. §§ 1–1804, provides that, in case a taxpayer fails to file timely a report necessary to enable the Department of Revenue to settle a tax, the Department may make an estimated settlement wherein a fifty per cent penalty is included (§ 804). From any estimated settlement no right to review or appeal is allowed. The Department of Revenue may, however, with the approval of the Auditor General, permit the taxpayer to file a report belatedly and then make a settlement based on such report, cancelling the estimated settlement theretofore made (§ 804). But such action is a matter of grace and not of right. Here, again, a right to review or appeal the Department's refusal to allow the filing of a belated report is expressly denied the taxpayer (§ 804). The only review or appeal provided for under the statute presupposes a prior "settlement" which has been based on a properly and duly filed report (§§ 1102, 1103).

For the most part, the tax claims in the instant case are based upon such estimated settlements. We think it is plain that the referee's hearing and determination of the amount of tax actually due did not involve a second trial of a controverted fact, such as the exercise of the power entailed in the Thompson case. We are, therefore, of the opinion that, under the circumstances here shown, the rule of the Anderson case is applicable and that the referee's redetermination of the Commonwealth's tax claims was a justifiable exercise of bankruptcy's power.

As to the trustee's appeal at No. 8475, it is his contention that the court below erred in affirming the referee's denial to the trustee of a right to set-off or recoupment for the liquor sold by the bankrupts to the State Liquor Control Board. In the alternative, and evidently to avoid the bar of the sovereign's immunity from a suit to which it has not consented, the trustee argues that the referee could have, and

therefore should have, conditioned the payment of the Commonwealth's tax claims upon its paying the claims of the bankrupt estates. We cannot accept either of these contentions.

While Sec. 68, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 108, sub a, provides that, "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid," it has been held that this section is to be interpreted in the light of the established doctrines of set-off at common law and in equity. Cf. Cumberland Glass Manufacturing Company v. DeWitt and Company, 237 U.S. 447, 454, 455, 35 S.Ct. 636, 59 L.Ed. 1042; In re Rosenbaum Grain Corporation, 7 Cir., 103 F.2d 656, 658. The presently pertinent inquiry, therefore, is whether the bankruptcy provision as to set-off embraces an independent claim against a sovereign.

A distinguishing feature of set-off is that it arises out of a transaction extrinsic to that out of which the primary claim arose. Cf. Hastorf v. Degnon-McLean Contracting Co., D.C.N.Y., 128 F. 982, 983. In short, a set-off rests upon a claim or demand based upon an independent cause of action. The independent nature of set-off is plainly recognized by the Federal Rules of Civil Procedure. Thus, Rule 13 (b) allows for the assertion of set-offs as "Permissive Counterclaims". But, unlike in the instance of a true counterclaim, i.e., a claim or demand arising out of the same transaction which gave rise to the primary claim and which must be asserted timely as a counterclaim (Rule 13 (a), failure to plead a set-off as a counterclaim does not defeat the right of action upon which it is based. The present importance of the distinction between a counterclaim and a set-off lies in the fact that, under both federal and local law, in a suit by a sovereign a plea of set-off, being based as it is upon matter unrelated to the primary claim, is the equivalent of an independent suit against the sovereign which, of course, may not be sued without its consent. See Nassau Smelting & Refining Works, Ltd., v. United States, 266 U.S. 101, 106, 45 S.Ct. 25, 69 L.Ed. 190; Commonwealth v. Matlack, 4 Dall.Pa. 303, 1 L.Ed. 843.

Art. I, Sec. 11, of the Pennsylvania Constitution, P.S. Art. I, § 11, provides that "Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pursuant to that authorization, the Legislature of Pennsylvania has provided for the enforcement of claims, such as the trustee here asserts, before the Board of Arbitration of Claims. 72 P.S. § 4651—1. But the trustee, although he first voluntarily adopted the procedure thus prescribed by the Pennsylvania Legislature, later withdrew his claims from the Board of Arbitration and sought enforcement thereof in a court of bankruptcy. This, the referee properly refused him the right to do.

It is, of course, true that when the United States or a State institutes a suit, it thereby submits itself to the jurisdiction of the court, but, as to claims against the sovereign, the latter's submission to a court's jurisdiction, because of its suit, draws in only such adverse claims as have arisen out of the same transaction which gave rise to the sovereign's suit. Cf. Bull v. United States, 295 U.S. 247, 261, 262, 55 S.Ct. 695, 79 L.Ed. 1421; United States v. Dugan Bros., Inc., D.C.N.Y., 36 F.Supp. 109, 110; State v. Holgate, 107 Minn. 71, 119 N.W. 792, 793. A defendant's right in such regard is one of recoupment. And in Bull v. United States, supra, it is said (295 U.S. p. 262, 55 S.Ct. 700, 79 L.Ed. 1421) that "recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." The rule of recoupment in bankruptcy derives from the rule that the trustee takes the bankrupt's property subject to the equities therein. It does not attach by reason of the set-off provisions of Sec. 68, sub. a. 4 Remington on Bankruptcy, 5th Ed., § 1435.

In the instant case the trustee's claims for liquor sold by the bankrupts to the State Liquor Control Board were manifestly unrelated to the Commonwealth's tax claims. The bankruptcy court was therefore without jurisdiction to entertain the trustee's claims in the absence of the Commonwealth's consent to such procedure.

As to the trustee's alternative contention that his claims might be enforced as a condition to the allowance and payment of the Commonwealth's tax

claims, the referee adequately answered that when he said, "If there is no jurisdiction to allow a set-off against a state, there is no jurisdiction to accomplish the same result by imposing a condition." In other words, what cannot be accomplished by direct action may not be achieved by indirection.

The orders of the District Court are affirmed at the cost of the respective appellants.

BIGGS, Circuit Judge (concurring).

While I concur in the results reached in both of these cases, I think that in respect to the appeal of the Commonwealth of Pennsylvania at our No. 8505 this court should go no further than to state that the facts before us are unlike those of Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, but are very similar to those in New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284. In the appeal at our No. 8505 the estimates of liability were made by the Pennsylvania Department of Revenue which is a purely ministerial agency and the trustee in bankruptcy did not appear before that body to contest the estimates. These facts take the case out of the ruling of the Supreme Court in the Arkansas Corporation Commission case. The ruling of New Jersey v. Anderson is applicable.