TRUMAN S. SKILTON *vs.* THE TOWN OF COLEBROOK.

First Judicial District, Hartford, March Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

General Statutes, § 2349, provides that if one resident of this State is indebted to another in such manner that the debt is liable to be assessed and set in the list of the creditor, and is not secured by mortgage on land in this State, the amount thereof shall, on request of the debtor, be deducted by the board of relief from his list and added to that of the creditor; while § 2351 declares that no greater amount of indebtedness shall be deducted than the assessed value of the property for which such indebtedness may have been contracted. *Held* that in view of the settled policy of the State as shown by its legislation, § 2351 must be construed as restricting the operation of § 2349, and as impliedly prohibiting any deduction for unsecured indebtedness which was not contracted to obtain, and did not in fact obtain, for the debtor taxable property which was afterwards set in his list and made the subject of assessment.
Such a deduction can only be made of an indebtedness which is fairly capable of a valuation at a sum equal to its amount.
The legislation for more than one hundred years last past, in respect to certain features of taxation, reviewed and commented on.

Argued March 1st—decided May 4th, 1904.

APPEAL from the refusal of the board of relief of the town of Colebrook to deduct $500 from the appellant's tax list; brought to the Superior Court for Litchfield County and heard on demurrer to the application, *Elmer, J.;* judgment for the defendant and appeal by the taxpayer. *No error.*

*Wilbur G. Manchester,* for the appellant (plaintiff).

*Samuel A. Herman,* for the appellee (defendant).

BALDWIN, J. The decision of this cause depends on the construction to be given to General Statutes, § 2351, and this requires a review of the legislation of this State on the subject of taxation, since 1777. At that date and far into

the succeeding century, our system, except so far as related to poll and faculty taxes, was in substance one of taxation on income, although in form it was one of taxation upon certain specified kinds of property. Either this property was put into the list of the taxpayer at a valuation no greater than the net income supposedly derivable from it, or else the assessment was made on such a percentage of the total valuation as would represent such income. Statutes, Ed. 1750, p. 137.

In 1777 it was enacted that " all Persons shall be set in the List at the Rate of Six per Cent. for the Monies due to them on Interest on good Security, deducting what they pay interest for, if any be." Session Laws of 1777, August Session, p. 473. In 1781 moneys lent to the State or the United States on interest were exempted from taxation. Session Laws of 1781, p. 574. In the Revision of 1808 these provisions were thus combined in stating what was to be assessed : " All monies loaned on good security, except monies loaned to this State, or the United States more than the owners thereof pay interest for, at six per cent on the just value thereof." Statutes, Ed. 1808, p. 469. In the Revision of 1821 it was re-enacted thus : ".All monies at interest, secured by notes or bonds of responsible persons, resident in this State, or elsewhere, except monies loaned to this State, and all monies on interest, secured by mortgage on real estate in this State, or elsewhere, more than the owners thereof pay interest for, shall be set in the list at six per cent." Revision of 1821, p. 448. In 1836 it was again re-enacted, with these changes : moneys due on any written obligations of responsible persons were included ; the words " more than the owners thereof pay interest for " were omitted ; any one so taxable for money at interest due to a resident of this State was given a right to have the amount of such indebtedness deducted from the valuation of the real and personal estate in his assessment list ; and provision was made for adding the amount thus deducted to the list of the creditor in the town of his residence. Statutes, Ed. of 1839, p. 604.

In 1852 three amendatory statutes were passed. One provided that if such indebtedness were secured by mortgage of real estate, the amount deducted should be listed against the creditor in the town, school society, or school district in which the land lay. The others provided that so far as school district taxation was concerned, no deduction from the list of an owner of land in the district should be made, whereby he should be relieved from paying full taxes on his land. Public Acts of 1852, pp. 83, 86, 87. In 1865 it was enacted that all money at interest secured by mortgage upon real estate in this State should be listed only in the town where the land was, "*provided* the debtor resides in such town, society or district." Public Acts of 1865, p. 86. In the Revision of 1866 the provision for adding the amount deducted from the debtor's list to that of the creditor in the town of his residence was retained (p. 715, § 35) for all cases where both resided in the same town, and for all where they did not "except where such debt is secured by mortgage on real estate." The next section (§ 36) read thus: "All money at interest, secured by mortgage upon real estate, situated within this State, shall be set in the list, and taxed only, in the town where said real estate is situated, if the debtor resides in such town."

In 1867 two statutes were passed, requiring consideration. The first provided that any deduction for indebtedness was to be made from the debtor's personal property only. Public Acts of 1867, p. 67. The second provided "that no greater amount of indebtedness shall be deducted from the list of any person, than the assessed value of the property for which the indebtedness was contracted." Public Acts of 1867, p. 72.

The change from the plan of taxing income to that of taxing property, and of taxing all property not particularly exempted, which took final effect in 1860 (Public Acts of 1860, p. 11), was not a sudden one. In 1851 all moneys, credits, choses in action, bonds and notes were made taxable, and thus for the first time moneys not at interest and earning no income were included. Public Acts of 1851,

p. 53, § 8; *Adam* v. *Litchfield,* 10 Conn. 127, 131; *Hamersley* v. *Franey,* 39 id. 176.

In the Revision of 1875 the provision for a deduction for indebtedness is extended to any indebtedness to a resident of this State upon which he could be taxed, and the limitation of the amount of the deduction is stated as that of "the assessed valuation of the property, for which such indebtedness may have been contracted." Revision of 1875, pp. 159, 160, §§ 37, 40. The words thus quoted are repeated in each of the later Revisions. General Statutes, Rev. of 1888, p. 858, § 3857; Rev. of 1902, § 2351.

It thus appears that, until 1867, in our legislation concerning taxation nothing was to be found indicating that any regard was to be paid to the source of the indebtedness for which a deduction was asked, nor suggesting any limitation of the right to a deduction to cases of indebtedness incurred in connection with the acquisition of property listed for taxation. Did the statute of that year providing that no deduction should be made in excess of "the assessed value of the property for which the indebtedness was contracted," assume that a deduction could never be made except for a debt contracted for the acquisition of taxable property, or was it intended to prescribe a limitation applicable only to cases of such deductions as might be made for debts that were so contracted?

From the beginning of our colonial history down to 1836, holders of secured debts who were themselves indebted to others on interest-bearing obligations, were taxable only on the excess of the debts they owned over those which they owed. In 1836 all holders of such debts, residing in this State, became taxable on the whole amount of them; and if any such debt were due from a resident of this State, he became entitled to have the full amount of it deducted from the total valuation of his taxable property. The intent of the law before 1836 was to tax a man as to his choses in action only on what he was really worth, or on the interest from them to which he was entitled, less any sum that might be due from him to others as interest on debts

due them.   The intent of the statute of that year was to substitute, for this, full taxation of all interest-bearing debts due from responsible parties, but, if both parties were residents of this State, to tax the value represented by them but once, and that in the list of the creditor.   This was so, equally, whether such debts were or were not incurred for property acquired.   The creditor was under all circumstances bound to include them in his list, and the right of the debtor to deduct their amount from his, while conditioned on his having taxable property from the valuation of which the deduction was to be made, was not conditioned on any connection between the debts and the acquisition of that property.

A year later, another statute was enacted, and is still in force, which indicates the same general intent to avoid a double taxation of values.   It provided " that money loaned on interest with an agreement that the borrower shall pay the taxes thereon, and secured by a mortgage of real estate in this State, to an amount equal to the assessed value of the land mortgaged, as valued and set in the assessment list of the town where it is situated, shall be exempt from taxation ; and the excess of any such loan over such valuation shall be assessed and taxed in the town where the lender resides, in the same manner as other money on interest." Public Acts of 1875, p. 16 ;  General Statutes, § 2319.   Here it is plain that the exemption of so much of the mortgage debt as does not exceed the value of the mortgaged property is in no way founded on the consideration that property may have been acquired by aid of money borrowed on the security of the mortgage.   It is also to be observed that this statute was adopted after the Revision of 1875 had provided that debts secured by real estate mortgage should be listed in the town where the land mortgaged was situated, even though the debtor did not reside there.   Rev. of 1875, p. 156, § 14.   The manifest object of this alteration of the law contained in the Revision of 1866 (p. 715, § 36) was to secure that town against being deprived by a mortgage, under any circumstances, of the power of taxing, either actually

Skilton v. Colebrook.

or in effect, all the land within its limits. The same result is now secured by General Statutes, § 2323.

From 1836 to the enactment, in 1875, of the statute exempting certain mortgage loans from taxation, all mortgage loans had been a proper subject of taxation against the creditor, if a resident of this State, even though the mortgagor had agreed with him to pay the tax ; and when that statute was adopted, they were taxable against the creditor in the town where the mortgaged land lay, although he might live and pay the bulk of his taxes in another town. The mortgagor, as respects town taxation, could claim a deduction from the valuation of his taxable property for the mortgage debt, as fully as if it had been unsecured. Rev. of 1875, p. 160, § 38. In practice he did not do this, except when he had not agreed with the mortgagee to pay the taxes on the debt. When he had so agreed, he paid full taxes on the land, and the creditor, as the statute was practically construed and administered, did not list and was not understood to be liable to list the debt.

By the statute of 1875, whenever the borrower had promised to pay the taxes on the debt the creditor was altogether relieved from any liability for them, if the debt were for an amount not exceeding the value of the security; and if it were for more he was only taxable on the excess, and in his own town. This statute therefore withdrew such debts, so far as they were secured, from the operation of the general laws as to making deductions from tax lists for indebtedness.

In the Revision of 1902 the laws which have been mentioned as to deductions for unsecured indebtedness assumed a new shape, and are to be found in §§ 2349, 2350, 2351.

The second section of the Act of 1852, as to listing mortgage debts against the creditor in the town where the mortgaged land lay (Public Acts of 1852, p. 83), which had appeared in the Revision of 1866, p. 715, § 37, Revision of 1875, p. 160, § 38, Revision of 1888, § 3855, was omitted. The first section of the same Act, which was that "whenever in the making or perfecting of the tax list of any person, any real estate shall be omitted or abated by reason of any

indebtedness secured by mortgage thereon, such indebtedness shall be taxable in the town, society or district in which such real estate is situated and there only," has never appeared in any Revision. It was little, if anything, more than an expression of the result to be achieved under the succeeding section, and had also received an important qualification by the Act of 1865, above mentioned. In lieu of it, General Statutes, Rev. of 1888, § 3828, after stating the general rule that choses in action shall be listed in the town where the owner resides, contained this exception: "but money, secured by mortgage, upon real estate in this State, when there is no agreement that the borrower shall pay the tax, shall be set in the list, and taxed only in the town where said real estate is situated." The same exception is given in the same words in the Revision of 1902, § 2323.

The revisers evidently considered it unnecessary to retain what was found as § 3855 in the Revision of 1888, since they had provided, in § 2323, where mortgage loans should be taxable, if the borrower did not assume the taxes, and, in § 2319, where any excess of a mortgage loan over the value of the mortgaged land should be taxable when the borrower had assumed the taxes. There was no occasion to provide for listing mortgage loans to an amount not exceeding the value of the mortgaged land, when the borrower had assumed the taxes; for they were exempted from taxation by § 2319.

The Revision of 1902, § 2349, however, contains one important innovation. All deductions for indebtedness not secured by mortgage on Connecticut real estate are to be made, not as before from the debtor's personal property only, but "from the list of said debtor," or as it is otherwise expressed, "from the listed property of said debtor." If the creditor resides in a different town from the debtor, provision is made, as before, for adding the indebtedness to his list in the town of his residence. Thus, if this section is not qualified by other statutory provisions, a landowner in one town who in any manner whatever has become so indebted to an inhabitant of another town "that the debt is liable to be assessed and set in the list of the creditor," pro-

vided there is no mortgage to secure it on Connecticut real estate, can have " the amount of said debt " deducted from his list. If, then, he owns land in his own town worth that amount, or more, it may, up to that amount or value, be wholly withdrawn from taxation ; and while the same amount will form part of the creditor's list, this, if the latter resides in another town, will go to the benefit of that town only.

There is no escape from this result unless § 2351 is regarded as qualifying § 2349 ; for the latter clearly provides that the full amount of any indebtedness between inhabitants of this State, which is of such a nature as to be " liable to be assessed and set in the list of the creditor," (that is, fairly capable of a valuation at a sum equal to its amount, as a basis of taxation against the creditor,) if not secured by mortgage on land in this State, must, at the debtor's request, be deducted from his listed property.

Merchants are allowed the benefit of a similar reduction from their " list " by § 2342, which expressly refers to § 2349 as showing the manner in which it may be obtained. In their case, as the average amount of goods kept on hand for sale during the year preceding the first of October is made the basis of assessment, and not any particular goods actually on hand and susceptible of valuation upon that day, it may be more questionable whether § 2351 applies. But as respects others, in our opinion it restricts the operation of § 2349 and impliedly prohibits any deduction for unsecured indebtedness which was not contracted to obtain and did not in fact obtain for the debtor taxable property which was afterwards set in his list and made the subject of assessment.

It is urged that the change of the phraseology of the Act of 1867, made in the Revision of 1875, and ever since retained, by which " may have been contracted " has been substituted for " was contracted," indicates that deductions may be claimed for debts that may not have been contracted for the acquisition of property. It is sufficiently accounted for as intended to obviate any possible criticism, on grammatical grounds, of the manner in which the original sentence was constructed.

A more serious objection to the effect given by the Superior Court to § 2351 is that it certainly excludes from the benefit of the deduction anyone buying taxable property on credit, who may alienate it before the first day of the following October, even if he have procured with the proceeds, or by way of exchange, other taxable property of equal or greater value; and may involve the exclusion from such benefit of purchasers of taxable property on credit, who may have been assessed for taxation by reason of its ownership on the first day of the following October, but have subsequently disposed of it. But the allowance of any deduction was a matter of legislative discretion. Its allowance may therefore be restricted within any limits which the General Assembly thinks proper to impose. By permitting such deduction as may be made from the entire list of the debtor, an important limitation, long maintained, has been removed. It seems to us that it could hardly have been intended to abandon it, without leaving something which would in some measure fill its place, and that the legislature relied for this on the terms of § 2351.

There is no error.

In this opinion the other judges concurred.