In re RAFLOWITZ et al.

No. 19893.

District Court, D. Connecticut.

Feb. 21, 1941.

Stoddard, Persky & Eagan, by Donald E. Cobey, all of New Haven, Conn., for Trustee.

David S. Rivkin, of New Haven, Conn., for City of New Haven.

HINCKS, District Judge.

In this matter the City of New Haven duly filed a claim for "Business Assessment" tax for five years preceding bankruptcy, showing the tax for each such year with the interest separately computed thereon, all in the aggregate amount of $224.78. These taxes had been duly assessed under Section 1152 of the Gen. Stats.Conn. The assessments here involved had all been made by the Board of Assessors as provided in Gen.Stat. § 1126 and Section 250 of the Charter of the City of New Haven, and no appeals from said assessments had ever been taken by the bankrupts.

The Referee, acting under Section 64, sub. a (4), of the Bankr.Act, 11 U.S.C.A. § 104, sub. a (4), after taking evidence, found the assessment of $1,500 for each year had been excessive to the extent of $530. He accorded priority only to the 1939 tax and to one-fourth of the 1938 tax (his reason for so dealing with the 1938 tax is not plain to me), but fixed the amount thus found entitled to priority by revising downward the assessed valuation in accordance with findings that the fair market value of the average stock on hand in 1938 and 1939 was less than the assessed valuations for those years.

■ I. I rule that the first proviso under 64, sub. a (4), does not preclude or limit the payment from the general estate in bankruptcy of taxes assessed prior to petition filed upon personal property of the bankrupt which by reason of a prior sale or other disposal never became a part of the estate in bankruptcy.

The act after giving express recognition of an unqualified priority for "taxes legally due and owing *by the bankrupt* to the United States or any State or any subdivision thereof" sets forth a stated exception, viz., "Provided, That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court."

■ It will be noted at the outset that the exception does not expressly cover a tax assessed against property of the bankrupt which never came into the estate. Rather, the language seems adapted to cover property in which an "interest" passed to the estate, thus importing the existence of other *interests,* such as liens, outstanding in others than the trustee. To be sure, the proviso might be construed to cover property never passing to the trustee on the theory that in such property the "interest" of the estate was zero. But if such was the legislative intent, surely the language used was singularly oblique to accomplish the intended result. And· the proviso, stating as it does an exception to the broad enacting clause, will be strictly construed. 59 C. J. 1089.

The proviso was first inserted into the Bankruptcy Act by the Amendment of 1926 (Sec. 64, sub. a), except that there it was confined to taxes assessed *against real estate* of a bankrupt. In all the years since 1926, there seems to have been no case in which the court was concerned with a possible application of the proviso to taxes against real estate finally disposed of· by the bankrupt before petition filed. Rather it has been availed of in cases in which real estate passing to the trustee was so incumbered with mortgages and tax liens that the equity therein of the bankrupt estate was without value. These cases give us no help in construing the proviso now that it is expanded to cover taxes on personal property which generally, as here, are not secured by lien. And my inquiry of the learned Editor of Collier's Four-teenth Edition discloses that there is apparently a complete dearth of Congressional committee reports such as might give a clue to the legislative intent in this respect.

Without the proviso, it is wholly clear that taxes assessed against property, either real or personal, are entitled to a priority which is not affected by the fact that the property assessed never comes to the bankrupt estate. City of Waco v. Bryan, 5 Cir., 127 F. 79; City of Chattanooga v. Hill, 6 Cir., 139 F. 600, 3 Ann.Cas. 237; In re Weissman, D.C., 178 F. 115. The suggestion has been made that under this rule it was unfair to general creditors that the general estate should be depleted by payments on account of taxes long overdue, especially when the assets upon which the taxes were assessed never became part of the estate. This point of view finds vigorous expression in the Weissman case, supra. And at first glance, it might be thought that the proviso under consideration was a piece of legislation in direct response to the invitation to legislative action contained in such cases as In re Weissman.

But on the other hand, there is nothing to show that Congress considered this situation as either unfair or improper. Before extending credit, creditors, at least through the intercession of a taxpayer, Gen. Stat. § 1215, may inquire of the tax collector whether a prospective customer has paid his taxes; if they extended credit when taxes were in arrears, Congress may have considered it not unfair that the taxes should be satisfied out of the general estate. And if the validity of a common claim does not depend upon a contribution to the general estate directly traceable from the common creditor, it is difficult to see that any consideration of "fairness" requires the application of such a test as a condition of priority. Moreover, there is a long history behind the Act which shows a continuous recognition of the importance and propriety of according substantial priorities to tax claims, state and federal. Throughout, the policy of priority has been in conflict with the policy of generosity to general creditors. If a broad solicitude for general creditors lay behind the proviso, one would not have expected it to be restricted, as it expressly is, to taxes *assessed against property;* we would rather have expected it to include all taxes unpaid after a specified period and thus cover income taxes, excise taxes and sales taxes, etc.

In the light of these considerations, I have come to the conclusion that taxes assessed on property of the bankrupt disposed of prior to bankruptcy fall well within the sweeping language in which the priority is granted and not within the limited and oblique language of the exceptive proviso.

I recognize that my ruling may occasionally produce a result apparently anomalous. Thus where an incumbered asset is transferred prior to bankruptcy the general estate will have to pay the entire tax assessed thereon against the bankrupt; this might occasionally constitute a greater sum than the payment as limited by the proviso which would be in order if the asset had become a part of the estate. But such occasions would be very rare. In respect of real estate, the taxes assessed thereon are generally secured by lien; the existence of the remedy in rem thus afforded generally makes it unnecessary for the taxing authorities to assert a remedy in personam against the general estate. This probably explains the absence of reported cases under the 1926 amendment concerned with taxes on real estate sold prior to bankruptcy. In respect of personal property, which generally is not subject to lien on account of property taxes, as a matter of commercial practice it is seldom that incumbrances accumulate to such an extent that the value of the equity therein is less than the accumulated taxes thereon. And State policy seems not to favor contractual incumbrances on personal property. Thus only rarely will a greater payment be required of the general estate in respect of taxes on assets disposed of before bankruptcy than would have resulted if the assets in question had become a part of the estate.

Perhaps the possibility of such occasional anomalies may have a tendency opposed to my conclusion. But on the whole, this possibility has a weight so slight as not to support a statutory construction which works a radical change fraught with very substantial consequences to the taxing authorities and the public bodies for which they stand.

■ II. I rule that under the applicable State law the personal property of the bankrupt merchant which was the subject matter of the taxes here involved must be viewed as an aggregate mass having a continuing entity irrespective of the fluctu-ations of its component items and its aggregate dimensions.

The taxing statute of the State here involved is Gen.Stats.Conn., Section 1152; Section 1152 contains a reference to Gen. Stats. § 1197, of which more anon.

Section 1152 provides: "The property of any trading, mercantile, manufacturing or mechanical business shall be assessed in the name of the owner or owners in the town, city or borough where the business is carried on * * *. The average amount of goods kept on hand for sale during the year, or during any portion of it when the business has not been carried on for a year, previous to the first day of October, except as otherwise specially provided by law, shall be the rule of assessment and taxation; but merchants shall also be liable to be assessed for any amount due them from responsible persons, beyond their liabilities; and any merchant may have a deduction from his list for debts owing by him, in the same manner and to the same extent as is provided in section 1197." By amendment in 1939, Cum.Supp., Section 323e, the average amount of goods kept on hand *for sale* was amended to read: "the average amount of goods kept on hand."

It thus appears that Section 1152 as it appears in the General Statutes and even more so in its amended form includes a conglomerate and heterogeneous mass of property—not only tangible property but also choses in action. But it will be observed that, unlike the general property tax Statute, Gen.Stats. § 1147, Section 1152 contemplates that the "rule of assessment" shall be not the fair value of individual, identifiable assets tangible or otherwise on the basis of ownership on a given day, but rather the "average amount of goods kept on hand during the year." Definitely this provision suggests that the taxable mass is a continuing entity; the amount of the assessment depends upon values of the aggregate mass averaged over a period of time. The suggestion is confirmed by the inclusion in the required lists of an amount in money equal to the excess of the accounts receivable above the merchant's liabilities. For there is a natural relationship between the tangibles and intangibles thus included. If credit is used to increase the stock of taxable tangibles, a corresponding reduction of the taxable intangibles occurs. And the continuity of this relationship from year to year suggests a

206

corresponding continuity in the taxable entity from year to year.

This view finds further support in the provision of the Statute that "any merchant may have a deduction from his list for debts owing by him, in the same manner and to the same extent as is provided in section 1197." Section 1197 provides in its last sentence that "no greater amount of indebtedness shall be deducted from the list of any person than the assessed valuation of the property for which such indebtedness may have been contracted." This has been construed to prohibit any deduction for unsecured indebtedness which was not contracted to obtain, and did not in fact obtain, for the taxpayer taxable property which was afterwards set in his list and made the subject of assessment. Skilton v. Colebrook, 76 Conn. 666, 57 A. 850. Thus this provision again demonstrates the existence of a continuing relationship between the tangibles and intangibles on the list.

In respect of real estate, it is required that the taxpayer's list shall contain "a separate description of each parcel," which the assessors shall separately value. Gen. Stats. § 1126. The absence of such a requirement for purposes of Gen.Stats. § 1152, suggests that by that statute an integral tax upon the property mass was intended, rather than an aggregate of composite taxes each laid upon an underlying item.

The same intent is further manifested in the implications of Gen.Stats. § 1219, providing for the separation of taxes when a portion of the property taxed has been conveyed. If, as I apprehend, this statute applies only to real estate, the absence of a corresponding provision to cover the tax imposed by Gen.Stats. § 1152 suggests that under Gen.Stats. § 1152 the tax is integral and indivisible. If on the other hand Gen. Stats. § 1219 may be construed as applicable to the "business" taxes here involved, its very content indicates that the tax is integral at least until the taxing authorities take the prescribed action for its separation. And no such action has ever been taken here.

■ III. If my second ruling, just above announced, be correct, there can be no room for an application of the first proviso of Section 64, sub. a(4), of the Bankruptcy Act, even though the proviso were construed as applicable to taxes on property disposed by the bankrupt prior to petition filed.

For if the subject matter of the tax is a property mass having a continuing entity for tax purposes, it follows that the entity which devolved upon the bankrupt estate was the same entity as that taxed in the years included within this claim.

Since the foregoing rulings deal with questions of first impression having wide public importance, I should consider that the trustee in bankruptcy was amply justified in prosecuting an appeal if indeed an estate of such diminutive dimensions can find it possible to finance such an effort.

■ IV. I rule that the Bankruptcy Court has full power to examine into the validity and amount of taxes constituting the basis of prior claims in bankruptcy and to withhold the payment of such claims to the extent that it finds that the underlying tax exceeds what is justly due and owing.

The claimant cites In re 168 Adams Building Corp., 7 Cir., 105 F.2d 704; In re Gould Mfg. Co., D.C., 11 F.Supp. 644, 29 A.B.R., N.S., 733; and In re Schach, D.C., 17 F. Supp. 437, 32 A.B.R., N.S., 428. But these cases, in so far as they appear to support the claimant's position, are in conflict with the great weight of authority, especially in this circuit.

To be sure, most of the cases which sustain the bankruptcy power in this respect are cases in which it was shown that some mistake of fact or of law had crept into the assessments made by the taxing authorities. Thus in New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284, it appeared that the tax under the State law was assessable upon the taxpayer's outstanding capital stock and the State board had made an assessment under a mistaken belief that the amount of such stock was $40,000,000 instead of $10,000,000 as was the fact.

In Re Simcox, D.C., 243 F. 479, it appeared that the State authorities had erroneously failed to allow for a partial exemption afforded by the State law; the Bankruptcy Court took only such evidence as was necessary to correct that error.

Likewise in Re E. C. Fisher Corp., D.C., 229 F. 316, 318. There it appeared that the assessment had proceeded upon a mistake of fact resulting from a false tax return for the bankrupt "which largely overstated its assets and understated its liabilities." The Bankruptcy Court therefore made its own

valuation, *there being no evidence* that "the tax commissioner might have based his valuation on other facts than those contained in the" false return. In re Heffron Co., D.C., 216 F. 642, is to the same effect.

In Arkansas Corp. Comm. v. Thompson, 8 Cir., 116 F.2d 179 (certiorari pending), it was held that a court having jurisdiction over the reorganization of a railroad under Section 77 of the Act, 11 U.S.C.A. § 205, had power to determine the amount and validity of taxes which were alleged by the trustee to have been discriminatory and based upon valuations giving undue effect to certain elements of value and excluding consideration of other elements. See also In re Denver & R. G. W. R. Co., D.C., 23 F.Supp. 298.

However, although in most of the cases referred to above (except the few cited by the defendant), the Bankruptcy Court acted only to correct mistakes entering into the assessments, a multitude of other cases make it plain that plenary power is present, at least in liquidation cases (Cf. City of Springfield v. Hotel Charles, 1 Cir., 84 F.2d 589), even though the facts may not invariably warrant its exercise. Board of Directors of St. Francis Levee District v. Kurn, 8 Cir., 91 F.2d 118, certiorari denied 302 U.S. 750, 58 S.Ct. 272, 82 L.Ed. 580; Board of Directors of St. Francis Levee District v. Kurn, 8 Cir., 98 F.2d 394; In re Gustav Schaefer Co., 6 Cir., 103 F.2d 237; Dickinson v. Riley, 8 Cir., 86 F.2d 385; In re DeAngeles, 8 Cir., 36 F.2d 218; Henderson County v. Wilkins, 4 Cir., 43 F.2d 670; In re Florence Commercial Co., 9 Cir., 19 F.2d 468; In re New York, O. & W. Ry. Co., D.C., 25 F.Supp. 709; In re Bradley, D.C., 16 F.2d 301.

■ And the power to re-examine the assessment is not confined to cases involving state taxes; it extends to federal taxes as well. In re Anderson, 2 Cir., 279 F. 525; In re General Film Corp., 2 Cir., 274 F. 903; In re Wyley Co., D.C., 292 F. 900; In re Sheinman, D.C., 14 F.2d 323; In re Geo. F. Redmond & Co., D.C., 17 F.2d 128, and In re Williams Oil Corp., D.C., 265 F. 401.

■ Nor is the estate in bankruptcy bound by the failure of the bankrupt seasonably to prosecute appeals from the action of the taxing authorities. In re Gustav Schaefer Co., supra; In re Lang Body Co., infra; In re E. C. Fisher Corp., supra.

■■ Unquestionably, the existence of an assessment, valid on its face, carries with it a presumption of validity sufficient to support the claim in the absence of chal- lenge. And when the claim has been attacked on the ground that the assessment was excessive, the presumption will prevail unless a vital mistake or a substantially erroneous conclusion is clearly demonstrated in the Bankruptcy Court. In re Lang Body Co., 6 Cir., 92 F.2d 338, certiorari denied Hipp v. Boyle, 303 U.S. 637, 58 S.Ct. 522, 82 L.Ed. 1097; In re Bradley, supra. Cf. In re Willett-Baker Corp., D.C., 31 F.Supp. 130.

■ V. I rule that the record here is insufficient to support a finding that the amount of the taxes justly due and owing was less than the amount claimed.

The bankrupt testified that only twice in five years was his store visited by an assessor who stayed but a few minutes and asked no questions and took no inventory. Such testimony would not have been admissible over objection. The conduct of the assessors is not in issue in this court. If the assessor is called as a witness in support of the assessed valuation, such questions might constitute proper cross-examination, to impeach the assessor in his testimonial, not his official, capacity. But although this testimony is in the record it is of little weight. Presumably the bankrupt was not continuously in his store for the five year period; conceivably the assessors may have made some more thorough examination of the stock which the bankrupt never knew of or forgot. And, in any event, the testimony adds nothing to the strength of the trustee's case; at most, it tends somewhat to weaken the presumption of validity which attaches to the claim.

■ The bankrupt also testified that during the years in question the value at cost of the average amount of stock on hand was $300, $400 less than the assessment. But the fact that the bankrupt for five years acquiesced in the assessment, though as noted above not binding on the estate, goes far to destroy his credibility as a witness. Cf. In re Gustav Schaefer Co., supra. Moreover, the testimony of the bankrupt covering a period of over five years was apparently almost wholly from memory. He had but one contemporaneous written inventory; that had been taken in January, 1937, and showed the stock valued at $1,139. One would naturally expect that an inventory taken so soon after the Christmas season would be below average. And Litvin, the bankrupt's brother-in-law, who purchased the stock at the bankruptcy sale for $425, also testified. But his testimony as

to values in past years was based wholly on recollections and impressions reaching far into the past and derived from frequent visits to the store apparently for social purposes.

Like the Referee, I do not question the veracity of the trustee's witnesses. Nevertheless, in my judgment the fact of official assessments, regular on their face, made and recorded from year to year, outweighs the vague and blanket estimates of quantities and values made years later. And since the values thus found by the Referee were not established by clear and convincing evidence, In re Lang Body Co., supra, and In re Gustav Schaefer Co., supra, the Referee's order should be modified to provide for payment in full for each of the five years included in the claim.

Ordered accordingly.