**In the Matter of Howard NUSSBAUM, Bankrupt.**

**No. 64–H–11.**

United States District Court
S. D. Texas,
Houston Division.

Aug. 26, 1966.

Herbert Finkelstein, Houston, Tex., for movant.

**MEMORANDUM and ORDER:**

NOEL, District Judge.

In this bankruptcy proceeding the County of Los Angeles, California, seeks review of an order of the Referee in Bankruptcy denying the County's claim for payment of ad valorem taxes from the bankrupt estate.

Howard Nussbaum was engaged in the retail fur business in Los Angeles, California. In 1962, the County of Los Angeles assessed personal property taxes on inventory, furniture, and fixtures used in connection with his California business. Nussbaum thereafter terminated the California venture and moved his principal place of business to Houston, Texas. On February 24, 1964, after operating in Houston for over six months, Nussbaum filed a proceeding for an arrangement under Chapter XI of the Bankruptcy Act with the Referee in Bankruptcy for the Southern District of Texas. When Nussbaum was unable to make the deposit required for confirmation of the plan, the Referee entered an order June 3, 1964, adjudging him a bankrupt.

The County of Los Angeles timely filed a proof of claim for $655.02, representing the taxes assessed in 1962 on the bankrupt's California business property, and asserted a priority under section 64(a) (4) of the Bankruptcy Act, 11 U.S.C. § 104. The Referee found that no part of the inventory, furniture, or fixtures upon which the California tax was levied came into the possession or administration of the trustee in bankruptcy. Construing the proviso to section 64(a) (4) to mean that "no order for payment of taxes assessed against property of the bankrupt will be made unless that property comes into the estate," the Referee denied the County's claim, either as a priority or as a general claim. The County filed a petition in this Court for review of the Referee's order.

Section 64(a) reads in pertinent part as follows:

The debts to have priority * * * shall be * * * (4) taxes legally

due and owing by the bankrupt to the United States or any State or any subdivision thereof: Provided, That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court. * * *1

The prefatory language of section 64 (a) (4) is sufficiently broad to support the claim of the County of Los Angeles: "The debts to have priority * * * shall be * * * (4) taxes legally due and owing by the bankrupt * * *." The taxes assessed against Nussbaum's California property are legally due and owing, and no person asserts otherwise. If the taxed property does not enter the bankrupt estate, however, the proviso to section 64(a) (4) would appear to modify the first clause in subsection (4). It is not surprising that interpreting section 64(a) (4) has proved most troublesome for jurists. A brief survey of the historical development of section 64(a) (4) aids in placing the statute in its proper perspective.

Prior to 1926, section 64(a) read much the same as it would today without the proviso.[2] The Fifth Circuit, in City of Waco v. Bryan, 127 F. 79 (5th Cir. 1904), held that under section 64(a) city taxes assessed against the bankrupt's personal property must be given priority, even though the taxed property did not come into the possession or administration of the trustee. In accord is City of Chattanooga v. Hill, 139 F. 600 (6th Cir. 1905). Judge Shelby, dissenting, did not disagree with the Court's interpretation of section 64(a) but was aroused by the inequities inherent in the statute. The purchasers of the taxed property which had been sold prior to bankruptcy, Judge Shelby surmised, took the property charged with the tax lien and, expecting to have to pay the past due taxes, made the purchases at a reduced price. If the City could collect from the trustee, Judge Shelby continued, the purchasers would receive an unexpected benefit, at the expense of the creditors of the bankrupt estate. The City had a practical alternative—it could look to the assessed property for satisfaction of the claim.

In 1926, the act was amended to include the proviso to section 64(a) (4), but the proviso pertained only to taxes on real property. The section was amended to its present posture in 1938, and the proviso now covers "any property." What objectives were these amendments designed to accomplish? The legislative history accompanying the amendments does not clearly reveal the cerebration of Congress, and, therefore, attention will be focused upon the observations of knowledgeable exponents.

In Remington on Bankruptcy, the following interpretation of the amended section 64(a) (4) is made:

This [the 1926 and 1938 amendments] is a clear departure from earlier law, at least prior to the 1926 amendments, under which taxes sometimes had to be paid even on property which never came into the hands of the trustee. * * *

Another comment represents the collective thoughts of a group of referees in bankruptcy:

We are of the opinion that when the property which comes into the bankruptcy court is not the property against which the tax is assessed, that [the 64(a) (4) proviso] prohibits the payment of the tax out of the proceeds of other property. Kruse, Tax Claims, Wage Claims and Inheritance, 15 Ref. J. 64, 67 (1941).

1. Section 64(a) (4) was amended in July 1966 to provide for discharge of taxes which were due prior to three years preceeding bankruptcy. Pub.L. No. 496, 89th Cong., 2d Sess. § 3 (July 5, 1966). The amendment does not apply to this bankruptcy.

2. The statute provided: "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality in advance of the payment of dividends to creditors * * *." 30 Stat. 563 (1898).

With emphasis upon the proviso language "in excess of the interest of the bankrupt estate," a referee has concluded that property which did not enter the bankrupt estate "would plainly be property in which the bankrupt estate has no interest and, therefore, taxes upon it would not be payable out of the estate." Bristow, Some Problems Arising Out of Tax Claims in Bankruptcy, 14 Ref.J. 90 (1940). Accord, Matter of the D. O. Summers, 45 Am.B.R. 123, 130 (Ref., Ohio 1939).

The precise issue before this Court has not been resolved by a federal court in a published opinion to date. However, the Fifth Circuit has held that if property which comes into the bankrupt's estate is subsequently set aside as exempt, section 64(a) (4) does not require that taxes legally due and owing on such property be paid out of the bankrupt's estate. Fakes v. Girand, 23 F.2d 90 (5th Cir. 1927) (taxes assessed against homestead property). Section 64(a) (4) has also been construed to allow the trustee to abandon property having taxes or liens in excess of the market value of the property without residual liability to the bankrupt estate for the payment of those taxes. 3 Collier, Bankruptcy para. 64.406, at 2178 (14th ed. 1961); 6 Remington, Bankruptcy § 2842, at 443–46 (5th ed. 1957).

■ The rationale for not requiring the trustee to pay taxes on abandoned or exempt property extends to property which never became a part of the bankrupt estate. To reason otherwise would be tantamount to saying that the estate could be liable for taxes on property which could have been abandoned had it entered the estate. Property which does not enter the bankrupt estate does not become a part of the estate and is of no value to the estate or to the creditors of the estate. The burden of paying taxes levied upon such property should fall upon the bankrupt or upon the purchasers who took the property subject to the taxes then due and owing; it should not fall upon creditors of the estate who have no interest in the property and who will not benefit from the payment of the tax claim.

■ If taxes on property which does not come into the hands of the trustee do not have priority under section 64(a), are they to be paid on a parity with general claims? While the wording of section 64(a) (4) is confusing, the most plausible interpretation is that once it is resolved that the claim is for taxes assessed upon property in which the bankrupt estate has no interest, the statutory language "no order shall be made" prohibits payment altogether. See 3 Collier, Bankruptcy, at 2183. Compare Fakes v. Girand, supra. Thus, ad valorem taxes owed by the bankrupt are to be paid out of the bankrupt estate only if the taxed property comes into the hands of the trustee or if the bankrupt estate has an interest in the taxed property which is not abandoned or exempt, at least when the government does not have a lien.

■ The Referee recognized as a possible exception to the requirement that the taxed property enter the bankrupt estate a situation where the bankrupt's business is a continuing entity of the business which existed at the time the property taxes were assessed, although the same property upon which the taxes were levied did not come into the trustee's hands. See Matter of Raflowitz, 37 F.Supp. 202 (D.Conn.1941). The Referee held this exception inapplicable to the Nussbaum bankruptcy:

> Here it is conceded that Bankrupt terminated his business in Los Angeles, disposing of all of his furniture, fixtures, and inventory against which the County had assessed the taxes, and that all of the furniture, fixtures, and inventory which he owned on the date of bankruptcy was newly acquired by him after he opened for business in Houston. Especially is this so when there is no evidence before the Court, and none was offered, to indicate that there were even any of the proceeds from the Los Angeles personal property invested in the Houston business.

I agree.

The findings of fact and conclusions of law made by the Referee adequately support the order here under review, and there is nothing in the record to demonstrate that any of his findings are clearly erroneous. The order of the Referee dated June 20, 1966 is affirmed, and the petition for review is hereby denied.

It is so ordered.